

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
DONOVAN CUNNINGHAM,

                Petitioner,

-against-

FLOYD D. BENNETT, Superintendent,
Elmira Correctional Facility

                Respondent.

------------------------------------------------------------ X

02 CV 4635 (ARR)

NOT FOR
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

By petition dated August 6, 2002, petitioner pro se, Donovan Cunningham, sought a writ of habeas corpus under 28 U.S.C. § 2254. Subsequently, petitioner was granted a stay under Zarvela v. Artuz, 254 F.3d 374 (2d Cir.), cert. denied sub nom. Fisher v. Zarvela, 122 S.Ct. 506 (2001), to exhaust claims that were not part of his original petition. On February 25, 2004, at petitioner's request, this court lifted the stay. By order dated September 3, 2004, the court accepted Cunningham's amended habeas petition for filing.

In his amended petition, Cunningham alleges nine grounds for habeas relief: (1) the evidence was not sufficient to prove his guilt beyond a reasonable doubt; (2) the trial court improperly denied his for-cause challenges to two potential jurors; (3) he was deprived of a fair trail because the trial court improperly admitted uncharged crimes evidence that petitioner pointed a gun at the victim twice before the murder; (4) he was deprived of a fair trial because the trial court erroneously permitted the ballistics expert to testify about the sound of gunshots, as

there was no evidence that he was an expert in that area; (5) he was deprived of a fair trial because the court permitted the prosecution to introduce collateral rebuttal evidence regarding the victim's life insurance policy; (6) he was deprived of a fair trial because the prosecutor's summation remarks denigrated the defense by characterizing it as innuendo to distract the jurors; (7) he was deprived of a fair trial because the prosecutor elicited perjured testimony by a witness who testified that he saw the shooting from a non-existent address; (8) the prosecutor committed misconduct by threatening to prosecute a potential defense witness as an accessory to the crime; and (9) he was denied effective assistance of trial counsel because his attorney failed to investigate and present his case appropriately, and to investigate and prepare an alibi defense when petitioner's testimony in the grand jury was that he was somewhere other than the scene of the crime. For the reasons stated below, Cunningham's petition is denied.

## BACKGROUND

Following a trial in New York Supreme Court, Queens County, a jury convicted petitioner of Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Weapon in the Third Degree. The state court sentenced petitioner to concurrent indeterminate prison terms of twenty-five years to life on the murder count, seven and one-half to fifteen years on the second-degree weapon-possession count, and three and one-half to seven years on the third-degree weapon-possession count. The Appellate Division affirmed petitioner's conviction, People v. Cunningham, 285 A.D.2d 557, 727 N.Y.S.2d 600 (2d Dep't 2001), and the Court of Appeals subsequently denied his application for leave to appeal. People v. Cunningham, 97 N.Y.2d 655, 737 N.Y.S.2d 56 (2001).

On April 6, 2002, petitioner submitted a petition for a writ of <u>habeas</u> <u>corpus</u> to this court in which he raised seven challenges to his conviction and continued incarceration: (1) the evidence was not sufficient to prove his guilt beyond a reasonable doubt; (2) the trial court improperly denied his for-cause challenges to two potential jurors; (3) he was deprived of a fair trial because the trial court improperly admitted uncharged-crimes evidence that defendant pointed a gun at the victim twice before the murder; (4) he was deprived of a fair trial because the trial court erroneously permitted the ballistics expert to testify about the sound of gunshots, when there was no evidence that he was an expert in that area; (5) he was deprived of a fair trial because the court permitted the prosecution to introduce collateral rebuttal evidence regarding the victim's life insurance policy; (6) he was deprived of a fair trial because the prosecutor's summation remarks denigrated the defense as innuendo to distract the jurors; and (7) he was deprived of a fair trial because a the prosecutor elicited perjured testimony by a witness who testified that he witnessed the argument directly preceding the shooting from a non-existent address.

Upon petitioner's request, the habeas petition was stayed in order for petitioner to submit a motion to vacate his conviction pursuant to section 440 of the New York Criminal Procedure Law and exhaust certain additional claims. See <u>Zarvela v. Artuz</u>, 364 F.3d 415 (2d Cir. 2004). Petitioner's 440 motion was denied by the Supreme Court of New York, Queens County, on September 8, 2003, and leave to appeal to the Appellate Division was denied. By motion dated February 3, 2004, petitioner moved this court to lift the <u>Zarvela</u> stay, and submitted an amended <u>habeas</u> petition. The amended petition asserts nine claims for relief—the seven claims in his original petition and the two additional claims exhausted by his 440 motion, namely: (1) the

prosecutor committed misconduct by threatening to prosecute a potential defense witness as an accessory to the crime; and (2) he was denied effective assistance of trial counsel because counsel failed to investigate and present his case appropriately, and to investigate and prepare an alibi defense when defendant's testimony in the grand jury was that he was somewhere other than at the scene of the crime.

## DISCUSSION

1. <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court "(1) arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or (2) decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413. A decision is deemed an "unreasonable

application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. "Under the latter standard, 'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411). The Second Circuit has added, however, that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2000) (internal quotation marks and citations omitted). Under AEDPA, a federal court must defer to the state court's findings of fact, which are "presumed to be correct." 28 U.S.C. § 2254(e). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

2. Petitioner's Sufficiency of the Evidence Claim

Petitioner claims that the evidence was legally insufficient to support his murder and weapon-possession convictions. Petitioner's legal insufficiency claim is without merit. Petitioners challenging the sufficiency of the evidence face a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). On federal habeas review, courts must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court must defer to

5

the jury's "assessments of the weight of the evidence and the credibility of witnesses." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A court may only grant habeas relief if the petitioner has shown that, "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324 (emphasis added).

There was ample evidence in the record permitting the jury to convict Cunningham of Murder in the Second Degree and both weapon-possession charges. Under New York law, a person is guilty of Murder in the Second Degree when, "[w]ith intent to cause the death of another person, he causes the death of such person or a third person." N.Y. Penal Law § 125.25(1). A person is guilty of Criminal Possession of a Weapon in the Second Degree when, "with intent to use the same unlawfully against another . . . [h]e possesses a loaded firearm," N.Y. Penal Law § 265.03, and Criminal Possession of a Weapon in the Third Degree when "he possesses a loaded firearm," N.Y. Penal Law § 265.02(4).

In the instant case, three individuals witnessed the events preceding the victim's death and testified to different, yet corroborative, evidence establishing that petitioner argued with the victim and then shot him. First, Marisol Miranda testified that on two successive days before the victim was killed, petitioner argued with the victim, silently threatening him by producing and loading a gun during their argument. Trial Tr. (Miranda), 1571-74. Between eight and nine hours after the last threat, Miranda and another witness, Ronald Robinson, both of whom had known petitioner and the victim for years, saw and heard petitioner arguing with someone near 72nd Street and Burchell Avenue. These two witnesses testified that petitioner was facing that person with his arm fully extended toward him, and that immediately thereafter, petitioner shot

him. Trial Tr. (Robinson), 1017-19; Trial Tr. (Miranda), 1565-70. Moments later, according to these Miranda and Robinson, petitioner walked briskly by them as they pretended to use the public telephone, and Robinson saw petitioner fling his hand as if he were throwing something into the bushes near the corner. Trial Tr. (Robinson), 1019-20; Trial Tr. (Miranda), 1568. Thirty minutes to one hour later, petitioner bribed Miranda to keep silent, giving her free vials of crack and telling her to "mind [her] business and keep quiet . . ." Trial Tr. (Miranda), 1575. Robinson later identified Cunningham in a lineup as the person he saw arguing with the victim on the date of the incident.

A medical examiner corroborated the witnesses' version of events, concluding that the victim had died as a result of a contact gunshot wound to the head, which he testified is consistent with homicide. Trial Tr. (Charlot), 1373, 1401, 1404. Other evidence also corroborated the testimony of these witnesses. First, two police officers on routine patrol saw a man who matched petitioner's description aggressively arguing with the victim. Trial Tr. (Parris), 1266-69; Trial Tr. (Wendelken), 1244-46. One of the officers later recognized the victim as one of the men in the argument. Trial Tr. (Parris), 1269. In addition, a third civilian witness, Lonnie Hyman, who knew both petitioner and the victim, testified that he witnessed petitioner vehemently yell at the victim, push him once, and pat his pockets. Trial Tr. (Hyman), 1307-55. After witnessing this argument and entering his house, Hyman heard a gunshot. Id. at 1309. A short while later, Hyman emerged from his house to discover that the victim – whom he had seen arguing with petitioner moments earlier – had been shot in the head. Id. at 1305-10.

Based upon this evidence, the jury reasonably concluded that petitioner, using a gun, killed the victim with the intent to do so. Although there was some conflicting testimony

7

presented, namely testimony by two defense witnesses who claimed that the victim's brother told them that he had found a gun when his brother died and disposed of it to cover up his suicide, this testimony was hearsay introduced solely to impeach the testimony of the victim's brother. Moreover, if they considered this testimony, the jury clearly chose to discredit it. A habeas court may neither "disturb the jury's findings with respect to witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony," Fagon v. Bara, 717 F.Supp. 976, 979 (E.D.N.Y. 1989). Rather, a "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson v. Virginia, 443 U.S. 326).

Having considered the evidence in the light most favorable to the prosecution, the court cannot conclude that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Accordingly, habeas relief is not warranted on this claim.

4. <u>The Denial of Cunningham's Challenges for Cause</u>

Cunningham next alleges that the trial court's denial of two for-cause challenges to potential jurors deprived him of the right to an impartial jury. Cunningham acknowledges, however, that neither of these prospective jurors sat on the jury; Cunningham used peremptory challenges to successfully remove both. Cunningham does not allege that the jury that convicted him was biased.

Under the Sixth Amendment, every criminal defendant has the right to trial by an impartial jury. Duncan v. Louisiana, 391 U.S. 145, 159 (1968). The Supreme Court has expressly held, however, that an erroneously denied challenge for cause by the defendant results in no constitutional error unless that juror is actually seated on the jury. Ross v. Oklahoma, 487 U.S. 81 (1988); see Harris v. Goord, 2004 U.S. Dist. Lexis 14017, *11-12 (E.D.N.Y. July 23, 2004). That petitioner had to use a peremptory challenge to strike the jurors at issue is of no consequence, for "the loss of a peremptory challenge [does not] constitute[] a violation of the constitutional right[] to an impartial jury." Ross at 88. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Id.; see also United States v. Martinez-Salazar, 528 U.S. 304, 307 (2000) ("[I]f the defendant elects to cure [a judge's error] by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any . . . constitutional right.").

Here, neither of the jurors whom petitioner contends should have been subject to for-cause challenges was seated on the jury. Instead, after the court denied petitioner's for-cause challenges, he challenged both of them peremptorily. Because neither juror actually sat on the jury, and because petitioner does not allege that any of the jurors sitting on the jury were biased, petitioner is not entitled to habeas relief.

5. Petitioner's Evidentiary Challenges

Petitioner alleges that the state court erroneously admitted uncharged crimes evidence, rebuttal testimony, and specific expert testimony, in violation of his constitutional rights. Challenges to state evidentiary rulings do not ordinarily provide the basis for habeas corpus relief

because it is not the province of a federal habeas court to re-examine state court determinations on state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Only where evidence "is so extremely unfair that its admission violates fundamental conceptions of justice" will a trial court's evidentiary ruling be reviewed by a habeas court. Dowling v. United States, 493 U.S. 342, 352 (1990); Roldan v. Artuz, 78 F.Supp.2d 260, 276 (S.D.N.Y. 2000) ("Issues regarding the admissibility of evidence in state court . . . are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness."(quotation marks and citation omitted)). Evidence will reach this threshold of unfairness only in the rare circumstances where it is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)). The petitioner bears the "heavy burden" of establishing fundamental unfairness. Roldan, 78 F.Supp.2d at 276.

A. *Admission of Uncharged Crimes Evidence*

Petitioner alleges that the state court's admission of evidence of uncharged crimes rendered his trial unfair. Petitioner has not shown that the admission of this evidence was erroneous, let alone fundamentally unfair. The court conducted a Molineux hearing before trial, as required by New York Law. During the hearing, the court listened to the arguments of both sides, concluding that introduction of the evidence was proper. Specifically, the court found that petitioner's two prior drug-related arguments with the victim and gun-point threats were admissible to prove petitioner's motive to kill the victim, his identification as the shooter, and, to a lesser degree, absence of mistake or accident, Proceedings 76-77, each a legitimate reason to admit uncharged crimes evidence under New York law. People v. Molineux, 168 N.Y. 264, 294

10

(1901). In addition, before the People actually introduced the uncharged crimes evidence, the court narrowed the scope of that ruling, specifically precluding the prosecutor from introducing any testimony that, during the uncharged crimes, petitioner pointed the gun at the victim or "used" the gun on the victim in any way. Trial Tr., 1480-81.

The admission of this evidence was consistent with New York law. Regardless, in light of the overwhelming evidence against petitioner, admission of the uncharged crimes evidence "viewed objectively in light of the entire record before the jury" would not have "remove[d] a reasonable doubt that would have existed on the record without it." Dunnigan, 168 F.3d at 125.

B. *The Admission of Expert Testimony*

Petitioner's next claim, namely that the trial court erroneously permitted a detective to testify to a matter beyond his expertise, is also a state evidentiary ruling that is not cognizable on habeas review unless petitioner can demonstrate fundamental unfairness. Even assuming, arguendo, that the trial court's admission of the detective's testimony that a single gunshot could sound like multiple gunshots was improper, petitioner has not established extreme unfairness. In light of the overwhelming evidence presented of Cunningham's guilt, the court finds no basis to decide that the court's admission of the detective's testimony concerning the sound of the gunshot provided the basis for conviction or removed a reasonable doubt that would existed on the record without it.[1]

---

[1] Since the admission of this evidence does not present a claim cognizable on habeas review, the court need not address the question of whether the evidence was improperly admitted under New York state law.

11

C. *The Admission of Rebuttal Testimony*

Petitioner next claims that the trial court's erroneous admission of rebuttal testimony regarding the insurance policy covering the victim violated his right to a fair trial. Like those discussed above, this claim is a state evidentiary ruling reviewable only if petitioner demonstrates that its admission was "so extremely unfair" as to violate "fundamental conceptions of justice." Dowling, 493 U.S. at 352. Petitioner has not met this burden.

First, the testimony of the insurance agent was not collateral as petitioner alleges. Two defense witnesses testified that Kenny Morrisey, the victim's brother, had told them that he found a gun near his brother's body but disposed of it in order to hide the fact that his brother had committed suicide to ensure his parents collected the proceeds of the life insurance policy. Trial Tr. (Stokeling), 1820-21; Trial Tr. (Bryant), 1886-87. This testimony created the impression that the victim's parents were not entitled to the benefits of the life insurance policy if their son committed suicide. In direct response to this evidence, the People introduced insurance agent Compain's testimony that the lift insurance policy authorized its beneficiaries to collect the proceeds even if the insured committed suicide, as long as the policy had been in effect two years at the time of the insured's death. Such evidence is properly admitted under New York law, which allows rebuttal evidence to be offered "in denial of some affirmative fact which the [defendant] . . . has endeavored to prove." People v. Harris, 57 N.Y.2d 335, 345 (1982), cert. Denied, 460 U.S. 1047 (1987) (citations omitted). Contrary to petitioner's allegation, this testimony was not collateral, but rather directly countered evidence offered by the petitioner that the insurance policy was available only in the absence of suicide.

Even assuming, however, that the testimony of the insurance agent was improperly admitted under New York law, in light of the overwhelming evidence against petitioner, admission of this testimony did not "remove a reasonable doubt that would have existed on the record without it," Dunnigan, 137 F.3d at 125, and therefore petitioner is not entitled to habeas relief.

6. <u>Petitioner's Prosecutorial Misconduct Claims</u>

Next, petitioner makes multiple claims of prosecutorial misconduct. To prevail on a claim of prosecutorial misconduct, petitioner must show more than mere trial error. <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir. 1998). "It is not enough that the prosecutor's remarks were undesirable or even universally condemned." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986). The prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden</u>, 477 U.S. at 181 (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-43 (1974)). The three factors to be considered in determining whether a prosecutor's actions create the "substantial prejudice" necessary to render a trial fundamentally unfair are: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the improper statements. <u>Tankleff</u>, 135 F.3d at 252.

    A. *Prosecutor's Reference to Suicide Defense as Innuendo*

Petitioner first claims that the prosecutor acted improperly when, on summation, he referred to petitioner's suicide defense as "innuendo" designed to distract the jurors. This comment did not create the "substantial prejudice" necessary to render a trial fundamentally unfair. Even assuming, <u>arguendo</u>, that the prosecutor's statement constituted misconduct, it was

13

not severe. First, it was an isolated comment, not a continuation of pervasive activity throughout trial. Second, the prosecutor's argument "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." Darden v. Wainwright, 477 U.S. 168, 182 (1986). With respect to the second factor in the Tankleff test, the judge, in his charge to the jury, explained to the jury that they were the sole and exclusive judge of the facts and that no one, including counsel, may presume to tell the jury how the issues of fact should be determined. Proceedings at 2192. Accordingly, it was clear that the jury was aware that the prosecutor's statements were mere argument. Finally, an allegedly objectionable summation "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." United States v. Young, 470 U.S. 1, 13 (1985). Here, in light of the overwhelming evidence against petitioner, even absent the prosecutor's statement regarding petitioner's suicide defense, conviction was certain. Tankleff, 135 F.3d at 252. Accordingly, petitioner suffered no prejudice as a result of the prosecutor's comment, and habeas relief on this basis is unwarranted.

B.  *Perjured Testimony*

Petitioner next alleges that the prosecutor committed misconduct by knowingly eliciting perjured testimony from a witness, Mr. Hyman, who allegedly testified falsely about the location from which he saw the crime. A conviction based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959) (citations omitted). The petitioner has the burden of demonstrating, by a preponderance of evidence, that the witness committed perjury, see Ortega v. Duncan, 333 F.3d 102, 106 (2d Cir. 2003), and, in determining whether perjury occurred, a court must "weigh all the evidence of

14

perjury before it." Id. at 107. A conviction must be set aside if "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). "[W]hen false testimony is provided by a government witness <u>without</u> the prosecutions' knowledge, due process is violated only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." Ortega, 333 F.3d at 106 (internal quotation marks and citations omitted) (emphasis added).

Cunningham cannot establish that the state's witness committed perjury. After the trial ended in 1998, a defense investigator went to the crime scene area and determined that the address from which Mr. Hyman testified he witnessed the events in 1994 did not exist. That the address from which Hyman testified he witnessed the 1994 events did not exist four years later does not establish that he committed perjury.

In any event, even if the state's witness misstated the address, petitioner has failed to establish that the state knew that the testimony was false. Accordingly, petitioner cannot succeed unless "but for the perjured testimony, [he] would most likely not have been convicted." Id. In light of the overwhelming evidence implicating petitioner, discussed above, petitioner cannot make such a showing. Even without Mr. Hyman's testimony, two other eye-witnesses testified that petitioner killed the victim. Thus, regardless of the alleged perjury, petitioner's conviction was certain.

C.   *Prosecutor's Threats to Potential Defense Witnesses*

Petitioner also alleges that the prosecutor acted wrongly by threatening a potential defense witnesses, Claude Smith, with prosecution as an accessory to the crime. Petitioner's allegations with respect to Mr. Smith are wholly unsupported, as there is no evidence in the record that the prosecutor ever threatened Mr. Smith.

7.   Petitioner's Ineffective Assistance of Counsel Claim

Before enactment of AEDPA, federal habeas courts reviewed all ineffective assistance claims de novo. As noted above, however, AEDPA amended the law to mandate deference to state court decisions that adjudicated a petitioner's claim on the merits. 28 U.S.C. § 2254(d). Also as noted above, a state court decision is an "adjudication on the merits" requiring application of the deferential AEDPA standard of review even when it does not explicitly refer to the federal claim or discuss the reasoning for its decision, as long as it finally resolves a party's claims and is based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). Here, the Supreme Court denied petitioner's 440.10 motion on the merits, finding that trial counsel was "not ineffective." 440 decision at 2. Thus, under Sellan, as the state court relied on substantive, rather than procedural, grounds to decide petitioner's application, this holding is an adjudication on the merits[2] and

---

[2]Respondent argues that petitioner's ineffective assistance of counsel claim is procedurally barred because the state court relied on an independent and adequate state ground to deny this claim on procedural grounds. In its decision denying petitioner's 440 motion, the Supreme Court, Queens County, stated that "[m]uch of the substance of defendant's instant motion is now deemed to have been waived because it could have been asserted in his appeals." The court goes on to analyze petitioner's ineffective assistance of counsel claim on the merits. Because the court was imprecise as to which claims were procedurally defaulted, this court will not deem petitioner's ineffective assistance claim procedurally barred. Accordingly, the claim is analyzed on the merits.

16

should not be overturned unless it was an "unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Under AEDPA, a state habeas petitioner claiming ineffective assistance of counsel must show that the state court "applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002); <u>Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir. 2001) ("Under AEDPA we inquire only whether the Appellate Division's rejection of this claim amounted to an unreasonable application of <u>Strickland</u>."). <u>Strickland v. Washington</u> requires a petitioner claiming ineffective assistance to prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).

Petitioner claims he was denied effective assistance of trial counsel because his attorney failed to investigate and present his case appropriately, and failed to investigate and prepare an alibi defense even though petitioner had testified before the grand jury that he was somewhere other than at the scene of the crime. This claim is meritless.

The decision by defense counsel not to introduce the alibi defense was a matter of strategy. "Strategic choices of trial counsel 'are virtually unchallengeable' in habeas corpus proceedings." <u>Bonneau v. Scully</u>, 1991 U.S. Dist. LEXIS 7150 (S.D.N.Y. 1991) (citation omitted), aff'd without op., 956 F.2d 1160 (2d Cir. 1992); <u>Weeks v. Senkowski</u>, 275 F.Supp.2d 331, 341 (E.D.N.Y. 2003) (counsel not ineffective for failing to pursue trial strategy in which petitioner's alibi defense would be that he was with other murderers drinking at a different

location); Walker v. Henderson, 492 F.2d 1311, 1313 (2d Cir. 1974) ("decision to call or bypass particular witnesses is peculiarly a question of trial strategy . . . which courts will practically never second guess" in considering allegation of ineffective assistance of counsel), cert. denied, 417 U.S. 972 (1974).

The record establishes that, contrary to petitioner's claim, there was no grand jury testimony that petitioner was in Kings County with two alibi witnesses during the crime. In fact, petitioner unambiguously testified in the grand jury that he was at home alone in his own bed on 116th street in Queens County at the time of the crime. Grand Jury Tr. 67. In light of petitioner's own testimony before the grand jury that he was alone, and not, as he now alleges, with Mr. Smith, at the time of the crime, trial counsel's decision not to pursue the alibi defense was clearly reasonable. Were the alibi defense presented, the prosecution would have been able to introduce the relevant part of petitioner's grand jury testimony in rebuttal in order to disprove the alibi defense. This would have undermined such a defense, and potentially undermined other aspects of the defense case, including the argument that the victim committed suicide. Accordingly, there is a no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Moreover, petitioner has not rebutted the strong presumption that counsel's representation fell within the range of reasonableness as measured under "prevailing professional norms." The record shows that trial counsel was highly effective throughout the proceedings, successfully arguing pre-trial to limit introduction of uncharged bad acts to minimize prejudice to defendant, making a strong opening statement, conducting a powerful cross-examination of

government witnesses, mounting a cohesive defense that the victim had committed suicide, and delivering a forceful summation.

For all of these reasons, the state court reasonably concluded that trial counsel's failure to investigate and present an alibi defense did not constitute ineffective assistance of counsel. Because defendant was not prejudiced and the result of trial would not have changed, the state court's conclusion constitutes a reasonable application of clearly established federal law.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because Cunningham has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Signed /
_____
Allyne R. Ross
United States District Judge

Dated: May 13, 2005
Brooklyn, New York

SERVICE LIST:

*Pro Se Petitioner*
Donovan Cunningham
99A2730
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

*Attorney for the Respondent*
Ranjana C. Piplani
Assistant District Attorney
Queens County District Attorney's Office
125-01 Queens Blvd.
Kew Gardens, NY 11415